**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 13-20346-CR-UNGARO/TORRES**

UNITED STATES OF AMERICA

v.

JULIO ROBAINA and RAIZA V.
ROBAINA,

      Defendants.
_____/

**ORDER ACCEPTING WAIVERS**

**OF RIGHT TO CONFLICT-FREE COUNSEL**

## I.    INTRODUCTION

A federal grand jury has indicted Julio Robaina and Raiza Villacis Robaina, husband and wife, on various tax-related offenses. Mr. Robaina, represented by attorney David M. Garvin, has already been arraigned. Mrs. Robaina is also, at least for now, represented by Garvin. She has not yet been arraigned because of potential conflict issues arising from Garvin's joint representation. Mrs. Robaina cannot be arraigned until she and her husband knowingly and intelligently waive their rights to conflict-free counsel and their waivers are accepted.

The Robainas have filed conflict of interest waivers [ECF Nos. 19; 20], and Mrs. Robaina also obtained independent legal advice from a criminal defense attorney other

than Garvin. The Robainas want the Undersigned to accept their conflict waivers, thereby permitting Mrs. Robaina to also be represented by Garvin.

The Government objects to the joint representation.

The Undersigned has reviewed the pertinent portions of the record, and held an evidentiary *Garcia* hearing on June 5, 2013, and received supplemental memoranda and declarations from the parties. [ECF Nos. 31; 32]. For the reasons stated below, the Undersigned **FINDS** that the Robainas' waivers of conflict-free counsel are knowing and intelligent. Therefore, the Undersigned **ACCEPTS** their waivers, with the caveat that they and/or Garvin immediately advise the District Court in writing if they later learn of circumstances generating an actual conflict. As explained below, an actual conflict would not necessarily require Garvin's disqualification or a change in the decision to accept the waivers, because the Robainas have knowingly, intelligently, voluntarily, and repeatedly waived their right to conflict-free counsel. Nevertheless, the Undersigned believes it is prudent to require immediate written notice to the District Court should an actual conflict later arise.

## II.     BACKGROUND

### A.  Procedural Background

As outlined in the May 16, 2013 indictment, the Robainas were indicted for various tax-related offenses. [ECF No. 1]. Garvin entered a temporary notice of appearance on their behalf on May 17, 2013. [ECF Nos. 8; 9].

2

On May 23, 2013, Garvin entered a permanent appearance on behalf of Mr. Robaina, but not Mrs. Robaina. On May 29, 2013, the District Court requested that if Garvin entered a permanent notice of appearance on behalf of Mrs. Robaina, then the assigned Duty Magistrate Judge conduct a *Garcia* hearing. [ECF No. 17].

Garvin filed a permanent appearance on behalf of Mrs. Robaina on June 4, 2013. [ECF No. 18]. At the same time, Garvin also filed signed waivers from the Robainas, which stated that: (1) they consent to Garvin's joint representation; (2) they do not believe that a conflict exists; (3) Mrs. Robaina had discussed any potential conflict issues with two independent counsel, in addition to discussing them with Garvin; (4) Mr. Robaina had discussed the potential conflict issues with Garvin; (5) they waived their right to separate counsel and any conflict issues; and (6) they waived any right to later argue that they should have had conflict-free counsel. [ECF Nos. 19; 20]. Attached to Mrs. Robaina's waiver was a letter from one of the independent attorneys she met with. [ECF No. 20-1].

On June 5, 2013, the Undersigned conducted the *Garcia* hearing. It lasted two hours and generated a 71-page hearing transcript.

At the end of the hearing, the Undersigned directed the parties to file post-hearing memoranda. The Robainas filed a 39-page memorandum and submitted two supplemental declarations providing further detail about their reasons for wanting Garvin to jointly represent them. [ECF No. 31]. The Government filed a 20-page

memorandum, opposing the joint representation and urging the Undersigned to exercise my discretion and refuse to accept the waivers.

### B.  The *Garcia* Hearing

At the hearing, the Undersigned examined the Robainas under oath to determine if they were competent to make knowing, intelligent, and voluntary waivers of their respective right to conflict-free counsel. The Undersigned confirmed that they had not taken any drugs or alcohol in the last forty-eight hours, felt physically fine, and could understand the proceedings. Both the Government and Garvin stated that they had no information that either of the Robainas were not competent. The Robainas then related the following:

The Robainas are married and have five children. Mrs. Robaina has a bachelor's degree from Florida International University. Mr. Robaina has a bachelor's degree from St. Thomas University.

Mrs. Robaina explained that she first met by herself with independent counsel Richard Diaz on two different occasions for four hours to discuss the potential conflict issues related to Garvin's representation of her and Mr. Robaina. She could not recall if these meetings were before or after the indictment. She advised that Diaz did not give her a recommendation on whether she should, or should not, obtain separate counsel.

After meeting with Diaz, Mrs. Robaina then privately met with another independent counsel, Melvin S. Black, regarding the potential conflict issues, for

approximately two and a half hours. Mrs. Robaina explained that Black recommended that she get separate counsel but informed her that it was ultimately her decision.

Finally, Mrs. Robaina also discussed the potential conflict issues with Garvin for three to four hours.

Mr. Robaina explained that he had privately spent four to six hours with Garvin discussing the potential conflict issues. Unlike Mrs. Robaina, however, he did not meet with other independent counsel about the potential conflict issues. Mr. Robaina had also joined his wife during one of the meetings with Diaz.

The Robainas explained that they had spent extensive time with Garvin, and, in Mrs. Robaina's case, two independent attorneys, reviewing the potential conflict scenarios. Nevertheless, despite the risks, they both wished to continue with the joint representation.

After receiving this background information, the Undersigned proceeded to explain the nature of the *Garcia* hearing to the Robainas. The Undersigned informed them that they each have a right to conflict-free counsel and that this right entitles them to counsel with a duty of loyalty only to each of them individually. The Undersigned explained that the existence of this right typically means that an attorney may represent only a single defendant in a given case.

The Undersigned then described to the Robainas a variety of hypothetical situations in which a conflict could materialize if Garvin represents them both. For

instance, the Undersigned explained that if one of them pled guilty, then he or she might have to cooperate against the other as part of any plea which included a cooperation provision. Thus, the Undersigned explained, one spouse's cooperation could negatively affect the other. The Undersigned also explained the scenario where one of them would want to testify at trial but the other did not want him or her to testify. In this case, the Undersigned explained, their interests would directly conflict.

The Undersigned also explained to the Robainas that Garvin might be precluded from representing **both** of them if an actual conflict arises because Garvin may have already acquired confidential information from both of them which would require him to use that information for the benefit of one client and to the detriment of the other. They both confirmed their understanding of that possible outcome.

In addition, the Robainas confirmed their understanding that the District Court may not continue the trial if they decided later to seek separate counsel and that this scenario could mean that the new attorney, if he or she were permitted to replace Garvin as counsel for one of them, might not be adequately prepared for trial.

The Undersigned also reviewed other possible scenarios:

- One party might want to advance the argument at trial that he or she knew nothing about the facts surrounding the jointly-filed tax returns, but this strategy might highlight to the jury the more-active involvement of the other spouse, to his or her detriment.

6

- One spouse might decide to not testify but the other spouse decides otherwise and the jury might hold the non-testifying spouse's silence against him or her, notwithstanding jury instructions to the contrary.

- Both of them might decide to cooperate and be debriefed by prosecutors and law enforcement agents but their information is inconsistent on a critical point, creating a situation where the Government would have to conclude that one of the two was lying.

- From a marital relationship perspective, one spouse learns that the other is having an affair (or had an affair) and adopts a vindictive attitude toward the other which would make a joint defense problematic.

- Their perspective of the case may change because it is still early and new facts and documents might be provided which might alter their understanding of the investigation and prosecution.

- A government trial witness testifies favorably about one spouse but says something harmful about the other, thereby forcing Garvin to confront the thorny issue about whether (and, if so, how) to cross-examine the witness.

The Robainas confirmed their understanding that all these scenarios might occur but also repeated their preference to waive any conflicts and go forward with Garvin as counsel for both of them. Mr. Robaina explained that he and his wife have been dealing

with the investigation for more than three years and are therefore familiar with the issues.

The Undersigned also advised the Robainas that they could arrange for additional independent counsel to review their decision to waive their right to conflict-free counsel. They both declined the opportunity to obtain additional independent legal advice on the issue of whether it made sense for Garvin to jointly and simultaneously represent both of them.

Mrs. Robaina confirmed that she understands the risks of dual representation, that she had discussed all of these issues and many more with Garvin, Diaz, and Black, and that she nonetheless wished to proceed with the joint representation. Mr. Robaina also confirmed that he understood the risks of dual representation, that he had discussed all of these issues and many more with Garvin and Diaz, and that he nonetheless wished to proceed with the joint representation. In addition, they both acknowledged that they could not later complain that Garvin was in an impermissible conflict situation which could not be waived if they were to later decide the results were unacceptable, such as guilty verdicts at trial and sentences that were harsher than they expected.

The Undersigned also asked the prosecutor if he wanted the Undersigned to ask any additional questions of the Robainas. The AUSA suggested questions and the Undersigned asked them. Before ending the hearing, the Undersigned gave the

Robainas the opportunity to raise any additional points, and they declined. [ECF No. 25, p. 75].

For its part, the Government objected to the Robainas' waivers. According to the Government's position at the *Garcia* hearing, the waivers should not be accepted because: (1) the court could never identify and address *all* the potential circumstances generating a conflict; (2) the waivers were not knowingly or intelligently made because the Robainas lack the requisite sophistication and capability; and (3) the waivers were "unnecessary."

The Government's first argument was that there was no way for the Undersigned to "smoke out" all the potential conflicts in this case. Therefore, according to the Government, the Undersigned should reject the waivers. However, as the Undersigned noted at the hearing, if the inability to identify all potential conflicts would result in the rejection of a waiver of conflict-free counsel, then there would **never** be a need for *Garcia* hearings because there would never be a situation where *all* potential conflicts were identified with certainty. Nevertheless, the Undersigned questioned the Robainas about myriad scenarios.

The Government's second argument was that because the Robainas did not have first-hand experience as litigants in a criminal trial, their waivers were not knowingly or intelligently made. Thus, as the Undersigned noted, under the Government's reasoning, only a repeat criminal offender who actually went through a full-fledged criminal trial

would be able to knowingly and intelligently waive a conflict. The Robainas admitted that they had never been criminal defendants at trial, but they had been litigants in civil cases or arbitrations in their private and public capacities even though they may not have been a party in a case which actually went to trial. To its credit, the Government later abandoned this theory in its post-hearing brief because it realized the case law did not support it.

Finally, the Government argued that the waivers were unnecessary and, in general, a "bad idea." However, the Government did not fully and specifically explain *why* it thought that is the case.

The Government did not at the hearing pinpoint a specific, actual conflict which had already been generated. Instead, its discussion of other potential scenarios was speculative and did not appear to be based on any specific information about the case or the Robainas. Rather, the Government's objections were general and could be raised about *any* criminal prosecution in which two indicted co-defendants wanted the same attorney to represent them.

As noted earlier, the Undersigned provided the prosecutor with the opportunity to suggest additional questions to ask the Robainas. One question involved the "fiscal considerations" involved in employing counsel, and the Robainas explained that it would be significantly less expensive to have one lawyer in the case, rather than two.

The Government suggested that the Robainas could accomplish the goal of relying on Garvin's expertise by having separate counsel and entering into a joint defense agreement. Conceding that a joint defense arrangement is certainly *possible*, the Robainas insisted that they prefer Garvin as their one joint counsel, instead of having him share defense responsibilities with another attorney under a joint defense arrangement.

At the conclusion of the *Garcia* hearing, the Undersigned reserved ruling on this matter and ordered supplemental briefing from the parties in order to review additional legal authority and to provide the Government with an opportunity to pinpoint any specific, actual conflicts.[1]

### C.  Post-*Garcia* Hearing Briefs

The Robainas submitted additional declarations along with their joint memorandum. Mrs. Robaina's declaration provided specific background information about Garvin's education, training and track record as a criminal defense attorney. This information is designed to support the Robainas' statements, during the hearing, about why they believe Garvin is the most appropriate attorney to handle their case, why they do not want to use any other attorney, why Garvin is their counsel of choice, and why they do not want to enter into a joint defense agreement with Garvin and another

---

[1]     In a post-hearing Order, the Undersigned required the Government to "clearly and unequivocally advise [in its post-hearing brief] whether it knows of any actual conflict, and, if so, the precise nature of the conflict and the circumstances generating it." [ECF No. 23, n. 1].

11

attorney.[2] Mr. Robaina's declaration also mirrored the positions he took in the earlier declaration and at the hearing: he and his wife "have thought long and hard on this decision," have "played all of the possibilities out in our heads" and stridently represent that they "have no conflicts," and "waive any conflicts needed to accomplish th[e] decision" to be jointly represented by Garvin.

The Government's memorandum concedes that the Undersigned may properly find the waivers to be knowing, intelligent and voluntary if he "finds the defendants' responses to be credible." The Government did not proffer any specific reason to challenge the veracity of the Robainas' responses, but it argues that it "has difficulty crediting the candor of the defendants' waivers."

Nevertheless, the Government's opposition is not based primarily on its view that the Robainas' responses about understanding the risks of joint representation were not believable. In fact, it expressly says that it defers to the Undersigned's judgment on whether the waivers were knowing and intelligent and concedes that the colloquy met and actually exceeded applicable legal requirements. Rather, the thrust of its opposition is that the Undersigned should exercise his discretion and refuse to accept the waivers

---

[2]    At the hearing, the Undersigned advised the Robainas that the Southern District of Florida has one of the best criminal defense bars in the country and that there are several highly skilled criminal defense attorneys in the district "with vast experience in criminal tax matters." In response, Mr. Robaina testified that "there is no doubt in my mind that the best representation that my wife and our family could have is Mr. Garvin." He further explained that "Mr. Garvin is the best to represent us." [ECF No. 25, pp. 17-18].

because the defendants' proposed joint representation arrangement "has a serious potential for creating substantial difficulties."

The Government proffers four basic grounds to support its view that the Undersigned should reject the waivers: (1) joint representation "poses serious **possibilities** for conflicts of interest that **may** undermine the right of one or both defendants to effective assistance of counsel," (2) joint representation "has a strong **potential** for compromising the Court's ability to adjudicate this case in an efficient and orderly fashion," (3) notwithstanding the defendants' stated waivers at this time, in the event of a conviction the verdict very well **may** be subject to ongoing attack, as the aggrieved defendant or defendants **may** try to challenge the sufficiency of their representation," and (4) prohibiting joint representation will "not prejudice the defendants in any meaningful way, since they both should be able to benefit from Mr. Garvin's skills and expertise by entering into an arrangement in which their lawyers work together collaboratively." [ECF No. 32, p. 3 (emphasis added)].

## III.  LEGAL STANDARD

The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." "When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) (internal citations omitted). An actual, direct conflict

exists, for example, where counsel "has previously represented a person who will be called as a witness against a current client at a criminal trial." *Id.* (internal citations omitted).

A criminal defendant may waive this protection and elect to proceed with conflicted counsel so long as his waiver is "knowing, intelligent, and voluntary." *United States v. Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006) (internal citations and quotations omitted). In order to ascertain whether a defendant has elected to waive a conflict and is fully informed of his rights and the nature of any conflicts beforehand, a district court must hold a hearing and address:

> [E]ach defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. *Cf. United States v. Foster*, 469 F.2d 1 (1st Cir. 1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." *National Equipment Rental v. Szukhent*, 375 U.S. 311, 332, 84 S.Ct. 411, 423, 11 L.Ed.2d 354, 367-68 (1964).

*United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984).

The Eleventh Circuit reiterated the standard a district court should apply when determining whether to accept a conflicts waiver:

> In order for a waiver of the right to conflict-free counsel to be knowing and intelligent, the State must show that the defendant (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel.

*Garcia,* 447 F.3d at 1337 (quoting *Zuck v. Alabama,* 588 F.2d 436, 440 (5th Cir. 1979)); *see also United States v. Schultz,* 565 F.3d 1353, 1357-58 (11th Cir. 2009) (noting that a magistrate judge has jurisdiction to hold a *Garcia* hearing and to determine whether a defendant knowingly and voluntarily waived any conflict).

There is a presumption in favor of a defendant's right to counsel of his choice. *Garcia,* 447 F.3d at 1337. But a district court is not *required* to accept a defendant's waiver. *United States v. Wheat,* 486 U.S. 153 (1988). "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160.

A determination that a defendant has waived the right to conflict-free counsel "disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest." *United States v. Rodriguez,* 982 F.2d 474, 477 (11th Cir. 1993) (internal citations omitted) (affirming defendants' conviction where attorney jointly represented three brothers and rejecting argument that separate attorney would have assisted in urging a blame-shifting defense); *see also Cruz v. United*

*States*, 188 F. App'x 908, 912 (11th Cir. 2006) (defendant's waiver "forecloses appellate review of any effective assistance of counsel claims arising out of the conflict of interest" arising from representation of multiple defendants by counsel from the same law firm).

The determination of whether there has been an intelligent waiver must depend "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Garcia*, 517 F.2d at 277 n. 5) (internal citations omitted). *See generally Cruz*, 188 F. App'x at 911 (noting that the district court "was correct in finding that Cruz waived the right to conflict-free counsel and agreed to proceed with counsel from the same firm that represented [her co-defendant].").[3]

## IV.   ANALYSIS

The Government's comment that the waivers might not have been knowingly and intelligently waived because it finds the Robainas' statements not credible is vague and not persuasive.

The Robainas are educated, intelligent and savvy defendants. They each submitted **two** declarations and answered myriad questions at the evidentiary *Garcia* hearing. The Government did not explain or even suggest <u>why</u> it contends the Robainas' sworn statements about their understanding of the waivers and their consequences are somehow not credible. Likewise, it does not specify what other

---

[3]    *Cruz* arose under 28 U.S.C. § 2255.  It is an appeal from Cases 04-21663-CV-UUB and 02-20206-CR-UUB.

questions could have been asked of them or what other representations the Robainas could have made to convince the Government of their knowledge and understanding of the waiver issue.

If the Robainas' responses were to be rejected as not credible because the answers somehow do not demonstrate knowing and intelligent waivers, then it would be difficult to find cases where a defendant did knowingly and intelligently waive the right to conflict-free counsel. But courts in this circuit (as well as in other circuits) regularly accept waivers and the appellate courts regularly confirm the trial court's findings (and therefore deem any challenge to be unavailable). *See, e.g., United States v. Solomon*, 856 F.2d 1572 (11th Cir. 1988) (affirming convictions of husband and wife in diluadid distribution conspiracy and concluding that magistrate judge performed sufficient *Garcia* hearing to support waivers); *United States v. Rico*, 51 F.3d 495 (5th Cir. 1995) (affirming convictions of husband and wife jointly represented by counsel, rejecting wife's argument that counsel had actual conflict because he could not advance wife's speculative defenses, and noting that wife validly waived her right to conflict-free counsel in a hearing which substantially complied with the *Garcia* requirements).

Although neither Fed. R. Crim. P. 44(c)[4] nor other applicable authority require a court to pinpoint legitimate motives for a defendant to validly waive his right to

---

[4]     That rule, entitled "Inquiry Into Joint Representation," requires the court to "promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including

conflict-free counsel, the Undersigned finds that the Robainas have in fact provided more than ample reason to explain their preference that Garvin jointly represent them.

First, the Robainas have researched the backgrounds of several attorneys and have concluded that Garvin's training, experience and formidable trial record makes him their top choice for the case. Given Garvin's background,[5] this is not an irrational conclusion.

Second, the Robainas believe it would cost them significantly more to retain two attorneys. Again, this is not an unreasonable assessment. The Robainas brand as unrealistic and naive the Government's suggestion that they retain two attorneys and possibly have one of them seek court-appointed counsel as a financially indigent defendant if they lack funds to hire a second private defense attorney. Even if the Robainas have the resources to retain two separate attorneys, defendants' financial abilities to retain a separate counsel for each is not a requirement for a valid waiver under *Garcia* and its progeny.

separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."

The rule does not specify what particular measures must be taken. But, as noted in the Advisory Committee Notes to the 1979 Amendment, "one possible course of action is for the court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation."

[5]    The Robainas note in their supplemental brief that Garvin is a Florida Bar Board-certified tax specialist, a certified public accountant, and holds an LLM in taxation from the University of Miami Law School.

Third, Garvin has been working with them on the investigation underlying the indictment for more than two years. He is familiar with the case, having met with Department of Justice officials in Washington before a federal grand jury returned the indictment. In light of this history, the Robainas are comfortable with Garvin and have apparently developed a strong working relationship with him. Moreover, they prefer to avoid the scenario of having another lawyer climb the learning curve in order to gain Garvin's familiarity with the facts and legal issues.

Although the Undersigned has the discretion to reject the waivers, the grounds suggested by the Government are largely speculative and are, for the most part, the kind of general, free-floating concerns which could be raised about *any* criminal prosecution where joint representation is requested.

The Government contends that the Robainas *could* still raise a post-conviction challenge to the joint representation, notwithstanding the comprehensive *Garcia* hearing and repeated assertions of waiver. But this point could be made about *any* type of waiver. Criminal defendants sometimes attempt to withdraw and/or challenge all sorts of waivers, regardless of how detailed the evidentiary hearing underlying the waiver – but courts routinely accept waivers anyway, regardless of the theoretical possibility that a specific defendant could still seek to avoid or contest the waiver. *United States v. Bascomb*, 451 F.3d 1292 (11th Cir. 2006) (granting Government's motion to dismiss defendant's appeal and concluding that Government need not submit a brief because he

agreed to waive his right to appeal in a hearing before a magistrate judge who specifically questioned him about the waiver); *United States v. Brehm*, 442 F.3d 1291 (11th Cir. 2006) (district court did not abuse its discretion when it denied defendant's request to withdraw his guilty plea and refused to hold a hearing); *United States v. Sims*, 143 F. App'x 210 (11th Cir. 2005) (granting in part a motion to dismiss the defendant's appeal because waivers of plea agreements are "important components" in the criminal justice system and the record demonstrated an adequate waiver of the right to appeal); *see also United States v. Etienne,* No. 12-14086, 2013 WL 2377787 (11th Cir. June 3, 2013) (affirming conviction because trial court did not abuse discretion in denying motion to withdraw guilty plea and noting that "the colloquy at the plea hearing sufficiently probed whether [defendant] was knowingly and voluntarily pleading guilty").

Moreover, any such hypothetical attack would be doomed to fail under the specific facts of this case. *See United States v. Blum*, 753 F.2d 999, 1006 (11th Cir. 1985) (affirming convictions of husband and wife jointly represented by counsel and explaining that "no clearer case of 'sandbagging' justice could occur than for us to hold that in spite of all of the warnings given to Mr. and Mrs. Blum, the latter could now rely on a claimed conflict of interest as a basis for reversing her conviction"); *Sims*, 143 F. App'x 210 (affirming conviction of defendant whose attorney also represented two co-defendants because he waived his right to conflict-free counsel); *cf. McCorkle v. United States*, 325 F. App'x 804 (11th Cir. 2009) (affirming denial of federal prison inmate's 28

U.S.C. § 2255 petition based on finding that the trial court conducted an adequate *Garcia* hearing). Thus, the Government's observation that the Robainas still have the power to try to challenge their waivers is an accurate but unconvincing truism.

Although the Eleventh Circuit has certainly affirmed convictions in criminal cases where trial courts exercised their discretion and disqualified counsel or refused to accept waivers, those cases do not necessarily *require* a trial judge to reject a waiver of the right to conflict-free counsel. *See Ross*, 33 F.3d at 1524 (affirming conviction and finding that trial court did not abuse its discretion by refusing to accept waivers, given the existence of "several actual or potential conflicts of interest"). Because the trial court's decisions on whether a defendant validly waived the right to conflict-free counsel and the related issue of whether the judge should exercise discretion and reject the waiver are fact-intensive, case-specific inquiries, the Undersigned must focus on the specific facts at issue here. Another court's decision to reject a waiver in another case may have little, if any, precedential value if the facts are significantly different. *See, e.g.*, *United States v. Alred*, 144 F.3d 1405 (11th Cir. 1998) (trial court did not deprive defendant of her right to counsel when it did not permit joint representation based on a proper exercise of discretion in concluding that she simply did not understand the

potential detriments of joint representation, thereby making her purported waiver not knowing and not intelligent).[6]

Cases involving married couples who are criminal defendants in the same prosecution are in significant ways different than multi-defendant cases involving strangers or defendants whose only common thread is the alleged criminal activity. The Robainas are married. They have children together. They are charged in connection with the filing of joint tax returns. Their interests, both in life and in this case, are largely aligned. The Government speculates that their interests *might* later diverge, but it has not yet proffered an actual conflict or a specific scenario in which this is likely to occur. Garvin advised that he is unaware of any actual conflict. Meanwhile, the Robainas have been living with the investigation and the subsequent indictment for approximately three years, and they have discussed the case and their joint representation preference myriad times, including in two declarations and in court.

To be sure, there may well be situations where a husband and wife cannot knowingly and intelligently waive their rights to conflict-free counsel, and there may well be cases where courts should reject waivers from a married couple. But this is not one of those cases. In fact, it is not unusual for courts to approve waivers from

---

[6]     By way of contrast, in the instant case, the Government is not mounting a serious challenge to the validity of the Robainas' waivers. After raising, in a vague, detail-free way, the theory that their answers were somehow not candid or credible, the Government abandoned the issue, leaving the credibility assessment to the Undersigned. Thus, cases where defendants were found to have not made knowing and intelligent waivers are likely not going to be particularly persuasive.

husbands and wives named as co-defendants in federal criminal cases. *Solomon*, 856 F.2d 1572 (affirming conviction of husband and wife after valid waivers); *Rico*, 51 F.3d 495.

## V.    CONCLUSION

The Undersigned concludes that (1) the Robainas knowingly, intelligently and validly waived their rights to conflict-free counsel, and (2) this case is not one where the Undersigned should exercise his discretion and refuse the waivers.

Nevertheless, because a trial court has a continuing obligation to comply with Rule 44(c) and may need to conduct further inquiry "on a later occasion because of new developments suggesting a potential conflict of interest," *Solomon*, 856 F.2d at 1580-81, the Undersigned's acceptance of the waivers is accompanied by a caveat: Defendants and their counsel must immediately provide written notice to the District Court should an actual conflict arise. This does not mean that the Robainas will need to obtain separate counsel in the event of an actual conflict. What it does mean, though, is that they have the duty to timely provide written notice so that the District Court and the Government are aware of the change in circumstances.

Based on the Undersigned's acceptance of the waivers, Raiza Villacis Robaina shall be **arraigned** before the duty magistrate judge on **July 2, 2013** at **10:00 a.m.** [ECF No. 29] with attorney David Garvin as her permanent counsel.

**DONE AND ORDERED** in Chambers, Miami, Florida, June 26, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Ursula Ungaro
All Counsel of Record